**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| PATROCINA A. RAMSEY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 1:19-405 |
| FARMERS NEW WORLD LIFE INSURANCE, | § § § § | |
| Defendant. | § § § | |

**MEMORANDUM AND ORDER**

This case arises from the otherwise lovely custom of naming sons for their fathers, with the son's name distinguished only by a "Jr." or roman numeral after the name he and his father share. This custom does carry a risk of confusion. Such confusion is usually harmless, but it can be costly when it involves the names of insureds on life-insurance policies.

The Ramsey family had two relevant life-insurance policies, one on the life of Edward Ramsey II (the father), and one on the life of Edward Ramsey III (the son). The family decided to let the son's policy lapse by stopping the premium payments. Instead, the family stopped making premium payments on the father's policy and continued to pay on the son's policy. Sixteen years later, in 2018, Mr. Ramsey II, the father, died. Farmers New World Life Insurance, which issued both policies, refused to pay benefits because the policy it issued on the father had lapsed in 2002, when the family stopped paying the premiums. Farmers refused to pay death benefits on the policy covering the son's life, because he was very much alive.

Mrs. Ramsey sued Farmers, alleging breach of contract in the refusal to pay death benefits on the husband's policy, and seeking punitive damages over its handling of the two life insurance

policies. (Docket Entry No. 1). Farmers has moved for summary judgment as to all claims. (Docket Entry No. 37).

I.     **Background**

Mrs. Ramsey was married to Edward Ramsey II, with whom she had two children, Edward Ramsey III and Kelly Ramsey.  In 1998, Farmers issued a life insurance policy with a number ending in '4370U to Mr. Ramsey III, and a life insurance policy with a number ending in '6172U to Mr. Ramsey II. (Docket Entry No. 37 at 10–15). According to Mrs. Ramsey, she and her husband did not intend to pay premiums for their children's life insurance policies once the children reached 18.  They instead planned to allow Mr. Ramsey III's policy to lapse by stopping the premium payments on that policy, '4370U, while continuing to make premium payments on Mr. Ramsey II's policy, '6172U.  However, beginning in 2002, the Ramseys stopped making premium payments on the father's policy, '6172U. (*Id.* at 16). The '6172U policy for the father then lapsed due to the failure to pay premiums.  The '4370U policy payments for the son, Edward Ramsey III, remained current and the policy remained effective. (*Id.*).

In May 2002, Farmers sent a letter to Mr. Ramsey II, the father, which was addressed to "Insured: Edward L. Ramsey II."  The letter explained that in order to reinstate the policy, which had lapsed in February 2002 from nonpayment, Farmers would require full payment of the unpaid premiums, for a total of $246.50, by May 20, 2002.  (Docket Entry No. 37 at 16–17). The premiums were not resumed and the father's policy remained lapsed.

In 2018, Edward Ramsey II, the father, passed away. Mrs. Ramsey claimed the life insurance benefits under the '4370U policy based on her belief that this policy insured the father, Mr. Ramsey II, not the son, Mr. Ramsey III. (Docket Entry No. 39 at 11).  Farmers declined to pay

the benefits on the '6172U policy for the father, which had lapsed years earlier. The only policy still in effect insured the life of the son, who was very much alive. (Docket Entry No. 37 at 8).

Mrs. Ramsey asserts that she believed she was continuing to pay premiums on the father's policy, although the premium amount—which was in fact for the son's policy—was much smaller than the amount she had previously been paying. Mrs. Ramsey acknowledges that the lapse in Mr. Ramsey II's life insurance policy resulted from her failure to make premium payments on that policy. She blames Farmers and its authorized insurance agent, Robert Paniagua, for not detecting that the Ramsey family had stopped making premium payments on the policy insuring the father, which they wanted to remain in effect, rather than the policy on the son's life that they intended to have lapse. (Docket Entry No. 39 at 9–10). The issues are whether there was a basis for the agent and Farmers to know that the Ramseys had made a mistake in failing to pay premiums for the policy they allowed to lapse and whether the agent or Farmers had a duty to inform the Ramseys that they were paying premiums on a policy they intended to lapse and failing to pay on a policy they intended to remain effective.

It is clear that none of the correspondence or information Farmers received from the Ramseys or from the agent, Mr. Paniagua, advised or put Farmers on notice that the Ramseys had allowed the wrong policy to lapse. The question is whether Mr. Paniagua made statements or omissions in his conversations with the Ramseys that caused them to believe that the policy they were paying premiums on insured Mr. Ramsey II, rather than Mr. Ramsey III. Mrs. Ramsey claims that Mr. Paniagua, the Farmer's agent, led her to believe on multiple occasions that the Ramseys were no longer paying premiums on the policy covering the son, when in fact they had stopped making premium payments for the father's policy, not the son's. (Docket Entry No. 39 at 9). Farmers contends that regardless of any such communications—which Mr. Paniagua does not

recall, all these years later—Mrs. Ramsey had the original of both policies. She possessed all the information about which policy number insured which family member, and which policy she was making the premium payments on.

Mrs. Ramsey acknowledges that the premium amount for her husband's policy was much greater than premium on the son's policy, but she claims not to have noticed the difference in price as an indicator that the policy she was paying was on the son's life. She acknowledges that she had copies of the policies with separate numbers for each.  Despite receiving a letter from Farmer's in 2002 addressed to "Edward L. Ramsey II," advising that the policy on his life was about to expire, Mr. Ramsey II and Mrs. Ramsey made no payments on that policy.  In 2009 and 2015, Mrs. Ramsey listed herself as a "spouse" on bank authorizations to pay premiums for her son's '4370U policy.  Neither Farmers nor Mr. Paniagua pointed out that the policy she continued to "autopay" was on her son's life, not her husband's.   (Docket Entry No. 37 at 20).

Farmers moves for summary judgment on the basis that since 1998, Mrs. Ramsey has possessed copies of both the '4370U and '6172 policies, which clearly identified which policy insured which person.  (*Id.* at 19).  The '4370U policy insured the son—Mr. Ramsey III—not the father—Mr. Ramsey II.   Mrs. Ramsey received notice of increases in the premium payment amounts due on the '4370U policy in 2003, 2006, 2007, 2008, 2009, 2015, 2016, 2017, and 2018, with the name, "Edward L. Ramsey," listed on each notice. (Docket Entry No. 37 at 12).  This premium amount was the lower amount payable for the son's policy.  Farmers asserts that it gave Mrs. Ramsey no reason to believe the policy remaining in effect insured her husband rather than her son and, lacking this knowledge, had no duty to advise Mrs. Ramsey that the policy she had allowed to lapse through her nonpayment of premiums in fact insured her husband's life.

4

Based on the record, the briefing, the notices of supplemental authorities, the hearing on the motions, and the applicable law, the court grants in part and denies in part Farmers' motion for summary judgment. The reasons are set out below.

## I.      The Standard for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). A material fact is one "that might affect the outcome of the suit under the governing law," and a genuine issue is one that could permit a reasonable trier of fact to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the nonmoving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.*, 477 U.S. at 323).

The nonmoving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson*, 477 U.S. at 252). However, the non-moving party is not required to establish a material issue of fact weighs conclusively in their favor; it is sufficient at summary judgment to show that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

## II.   Analysis

### A.   Breach of Contract

"Under California law, a claim for breach of contract includes four elements: that a contract exists between the parties, that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant breached those contractual duties, and that plaintiff's damages were a result of the breach." *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010) (citing *Reichert v. General Ins. Co.,* 68 Cal.2d 822, 830, 69 Cal. Rptr. 321, 442 P.2d 377 (1968)).

The complaint does not list which insurance contract Mrs. Ramsey is alleging Farmers breached, or how.  The complaint states that "pursuant to the terms, provisions and conditions of the applicable FARMERS policy, FARMERS is contractually required to pay death benefits to RAMSEY as a result of the death of Decedent Edward L. Ramsey." (Docket Entry No. 1-1 at 7). The only insurance contract covering the life of Mr. Ramsey II when he died in 2018 was the '4370U policy that had lapsed for nonpayment of premiums back in 2002.  The policy still in effect, covering Mr. Ramsey III, could not have been breached because the insured was still alive. The court construes this claim as one for the breach of the '4370U policy.

6

Farmers argues that it "cannot be liable on a breach of contract theory for failing to pay benefits under the '4370U policy, because that policy insured the life of Edward Ramsey III, who is still alive." (Docket Entry No. 37 at 22). In response, Mrs. Ramsey asserts that the family's Farmers agent, Mr. Paniagua, was informed of the Ramseys' decision to allow the policy insuring the life of Mr. Ramsey III to lapse, not the policy insuring Mr. Ramsey II. (Docket Entry No. 39 at 18). Mrs. Ramsey argues that it should have been clear that she received incorrect advice from Mr. Paniagua on which policy had lapsed, and that "20/20 myopic hindsight is not the proper analysis to take when determining whether a mistake occurred in the cancellation of Mrs. Ramsey's husband's policy." (*Id.* at 18–19). (Note: the husband's policy was not cancelled by any affirmative act on the part of Farmers or Mrs. Ramsey; it lapsed when the Ramseys failed to pay the premiums.)

The language of the '4370U policy specifically insured the life of Mr. Ramsey III. Mrs. Ramsey has presented no facts showing otherwise.  She has presented facts that show only that she was mistaken about whose life was insured by the policy that she allowed to lapse.  (Docket Entry No. 39 at 18).  A court "do[es] not rewrite any provision of any contract, including the standard policy underlying any individual policy, for any purpose." *Certain Underwriters at Lloyd's of London v. Superior Ct.*, 24 Cal. 4th 945, 960 (2001). The court cannot substitute in one name for the other in the '4370 policy in order to force the '4370 policy to cover the decedent, Mr. Ramsey II, rather than the son, Mr. Ramsey III.

Mrs. Ramsey argues that the insurance agent misrepresented that it was the son who was insured when the Ramseys stopped paying on what they thought was the son's policy, but was instead the father's policy. Mrs. Ramsey cites several cases in which an insurance agent made a mistaken representation about a material aspect of the coverage during the formation of the

insurance contract, and the insurer was subsequently held to that representation. *See, e.g.*, *Home Indem. Co. v. Mission Ins. Co.*, 251 Cal. App. 2d 942, 951 (1967) ("The insurance company, and not the applicant, is charged with the agent's error, if any, in the selection of and completion of the application [.]"); *Beach v. U.S. Fid. & Guar. Co.*, 205 Cal. App. 2d 409, 416 (1962) ("When the insurance agent was given information about the cars owned by the insured, the insurer [was] chargeable with the knowledge and acts of its agent[.]"). These cases stand for the proposition that an insurance agent's representation that the insured has been covered in a certain manner binds the insurer. The cases do not stand for the proposition that an agent's failure to correct the policyholder's mistake as to the identity of the insured, unrelated to contract formation, binds the insurer. Mrs. Ramsey cites no cases to that effect. (Docket Entry No. 39).

If the court instead reads Mrs. Ramsey as arguing that the Ramseys did not understand which policy covered which Ramsey at the time of formation, this is an argument that the policy is void, not that the contract was breached. "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. . . . Thus, 'the mutual intention of the parties at the time the contract is formed governs interpretation.'" *Rosen v. State Farm General Ins. Co*., 30 Cal. 4th 1070, 1074 (2003) (citations omitted). "Consent is not mutual, unless the parties all agree upon the same thing in the same sense." Cal. Civ. Code § 1580. For example, in *Balistreri v. Nevada Livestock Prod. Credit Assn*., 214 Cal. App. 3d 635 (Ct. App. 1989), the plaintiffs believed that the deed of trust covered their son's property when in fact it covered their own property. In that case, the court held that "there was no consensus . . . and therefore no binding contract." *Id.* at 865 (internal quotations omitted). If there was no meeting of the minds over whose life the '4370U policy insured, then that policy is void and Mrs. Ramsey would have no basis for recovery under a theory of breach.

Finally, Mrs. Ramsey appears to claim a breach of the '6172U policy, which covered her husband's life, but which she allowed to lapse by stopping the payment of premiums for that policy.  That is the policy under which Mrs. Ramsey intended to recover when her husband died. She frustrated that intent by failing to pay the premiums, instead, and by mistake, paying the premiums only for the policy covering the life of her son. At best, the facts Mrs. Ramsey alleges would show a unilateral mistake on her part as to whether the '6172U policy covered the son's life or the father's.

"A factual mistake by one party to a contract, or unilateral mistake, affords a ground for rescission in some circumstances." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 278 (2001), *as modified* (Sept. 12, 2001).  "[R]escission is . . . available for a unilateral mistake, when the unilateral mistake is known to the other contracting party and is encouraged or fostered by that party." *Fid. Nat'l Title Ins. Co. v. Terra Mktg., Inc.*, No. 15-CV-02641, 2015 WL 12765114, at *4 (C.D. Cal. Sept. 2, 2015) (internal quotations omitted).  At the hearing on the motion for summary judgment, the court asked the plaintiff's counsel whether the action is based on the plaintiff's unilateral mistake as to which policy insured which family member. (Docket Entry No. 74). Counsel rejected this claim for relief, stating that the complaint did not allege rescission as a remedy and that the plaintiff did not wish to amend to do so. The court therefore notes that although the doctrine of unilateral mistake may be applicable to the facts, Mrs. Ramsey has rejected this as a claim for relief under contract law.

The court grants Farmers' motion for summary judgment as to the breach of contract claim.

### B. Breach of Implied Covenant

"A claim for breach of the implied covenant of good faith and fair dealing requires the same elements [as breach of contract], except that instead of showing that defendant breached a

contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Boland, Inc.*, 685 F. Supp. 2d at 1101 (citing *Carma Developers, Inc. v. Marathon Development California, Inc.,* 2 Cal. 4th 342, 372–73, (1992)).

"[T]here are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without." *Mosley v. Pac. Specialty Ins. Co.*, 49 Cal. App. 5th 417, 435 (2020), *as modified* (June 24, 2020) (quoting *Love v. Fire Ins. Exchange* 221 Cal. App. 3d 1136, 1151 (1990)).  Farmers' failure to pay benefits was not unreasonable because the policy insuring Mr. Ramsey II was not breached by the failure to pay death benefits after Mr. Ramsey II died.

"[A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001). This "genuine dispute" rule applies both to disputes over policy interpretation and factual disputes. *See id.* at 348; *Guebara v. Allstate Ins. Co.* 237 F.3d 987, 992–994 (9th Cir. 2001). "The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723–24 (2007), *as modified* (Dec. 19, 2007). "The genuine issue rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability

under California law." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161–1162 (9th Cir. 2002).

It is undisputed that Mrs. Ramsey intended to allow her son's policy, not her husband's, to lapse for nonpayment of premiums. She alleges that the insurance agent had the duty to, but did not, inform her that she was paying her son's policy premiums, keeping that policy in force, and no longer paying her husband's policy premiums, allowing it to lapse. Mrs. Ramsey argues that Farmers should have realized a "mistake must have taken place with the cancellation [more accurately, the lapse] of her husband's policy" due to her failure to pay the premiums and should have "reach[ed] out to its agent to get any information he may have had about the matter." (Docket Entry No. 39 at 21). In response, Farmers argues that because "[Mr.] Paniagua's alleged statements could not have changed the fact that the '4370U policy was on the life of a living person," Farmers did not contact Mr. Paniagua after Mr. Ramsey II died in 2018 and Mrs. Ramsey disputed the refusal to pay. (Docket Entry No. 42 at 17). Farmers had no duty in 2002 to learn why the Ramseys had let a policy lapse from non-payment. Farmers determined that it did not need to learn the reason from Mr. Paniagua in 2018, because the policy had long been lapsed.

Mrs. Ramsey argues that one of Farmers' employees gave false testimony at his deposition by stating that there was no claim on the life of the insured. This testimony was true. As Farmers explains, "there could be no claim on the '4370U Policy" that insured Mr. Ramsey III while he remained alive. (*Id.* at 18). Finally, Mrs. Ramsey argues that she twice listed herself as the "spouse" of the individual insured by the '4370 policy, and that this should have triggered an investigation by Farmers. (Docket Entry No. 39 at 22). But Mrs. Ramsey listed herself as "spouse" in 2009 and 2015 on bank authorizations for automatic payments on the policy, not on the policy

itself or on other correspondence with Farmers, and she did so only twice over a 20-year period during which she held copies of both policies and paid premiums on one. (*Id.*).

"While certain actions that an insurer may have failed to take are important in analyzing its overall handling, a mere recitation of actions that an insurer should have taken is not dispositive. Indeed, if this were the case, then most insureds could easily claim bad faith." *Cardiner v. Provident Life & Acc. Ins. Co.*, 158 F. Supp. 2d 1088, 1105 (C.D. Cal. 2001). "That Defendant did not exhaust all possible tests is not dispositive." *Phelps v. Provident Life and Accident Ins. Co.,* 60 F. Supp. 2d 1014, 1023 (C.D. Cal. 1999). Mrs. Ramsey's allegations of bad faith amount to a list of actions she believes Farmers should have taken in order to determine whether Mrs. Ramsey was mistaken about who the '4370U policy insured when she stopped paying premiums on that policy.

Mrs. Ramsey argues that because "FARMERS failed to engage in any meaningful investigation whatsoever," the genuine dispute defense cannot apply. (Docket Entry No. 39 at 24). This ignores the facts that Farmers had. Farmers sent Mr. Ramsey II a letter in 2002, addressed to him using his full name and roman numeral, indicating that unless he paid past due premiums, the policy on his life would lapse. (Docket Entry No. 37 at 16–17). Mr. Ramsey II did not respond to the letter, nor did he make any further premium payments on his policy. Farmers was not on notice that any further investigation was needed based on what Farmers knew from its own communications with the Ramseys. Farmers had no basis to believe that the Ramseys were confused about who the active policy insured, and so was not on notice of the need to conduct an investigation into whether Mrs. Ramsey had let the wrong policy lapse over a decade before the death claim. Even if Farmers had investigated and determined that Mrs. Ramsey believed she was allowing her son's policy to lapse via non-payment, Farmers would not be obligated to pay Mrs. Ramsey benefits under the lapsed policy.

Even when the facts are viewed in a light favorable to Mrs. Ramsey, Farmers did not act in bad faith.  Its motion for summary judgment is granted as to the bad faith claim.

### C.  Negligence

The elements of negligence are: (1) a legal duty to use due care; (2) a breach of that duty; (3) causation; and (4) damages. *Ladd v. County of San Mateo,* 12 Cal. 4th 913, 917 (1996); *Brown v. Ransweiler,* 171 Cal. App. 4th 516, 534 (2009). "Ordinarily, the issues of breach and causation are questions of fact for the jury." *J.P. ex rel. Balderas v. City of Porterville*, 801 F. Supp. 2d 965, 990 (E.D. Cal. 2011) (citing *Lindstrom v. Hertz Corp.,* 81 Cal. App. 4th 644, 652 (2000)).

Farmers quotes *Minnegren v. Nozar*, 4 Cal. App. 5th 500, 507 (2016), for the proposition that "[n]egligence is either the omission of a person to do something which an ordinarily prudent person would have done under given circumstances or the doing of something which an ordinarily prudent person would not have done under such circumstances. It is not absolute or to be measured in all cases in accordance with some precise standard but always relates to some circumstance of time, place and person." Although Farmers focuses on its own actions, the negligent actions of an insurance agent may create liability for the insurer. *Paper Savers, Inc. v. Nacsa*, 51 Cal. App. 4th 1090 (1996).

The record raises a factual dispute material to determining whether Mr. Paniagua: (1) affirmatively represented to the Ramseys that they had allowed the son's policy to lapse by stopping the premium payments on that policy, while keeping the father's policy in place; or (2) negligently omitted to question the Ramseys as to whether they in fact wanted to allow the father's policy to lapse for failure to pay premiums while keeping the son's policy in effect.  Farmers urges the court to apply the more demanding "negligent misrepresentation" standard to any claim regarding Mr. Paniagua. (Docket Entry No. 42 at 18). But Mrs. Ramsey has not alleged negligent

misrepresentation, and it is not necessary to consider the higher standard for misrepresentation when there are sufficient allegations of ordinary negligence. *See Paper Savers, Inc. v. Nacsa*, 51 Cal. App. 4th 1090, 1103 n.7 (1996)

Instead, viewing the complaint and briefing in the light most favorable to Mrs. Ramsey, it appears that Mrs. Ramsey is alleging that Mr. Paniagua was aware that the Ramseys wished to have Mr. Ramsey III's policy lapse and that they had in fact instead allowed Mr. Ramsey II's policy to lapse. Mrs. Ramsey alleges several conversations with Mr. Paniagua in which she informed Mr. Paniagua of her decision to keep only Mr. Ramsey II insured, and in which Mr. Paniagua assured her that Mr. Ramsey II's policy remained in force, even though Mr. Paniagua knew or should have known that the Ramseys were cancelling the wrong policy. (Docket Entry No. 39 at 9–10). Regardless of whether Mrs. Ramsey's allegations are construed as an affirmative representation by Mr. Paniagua that the policy for Mr. Ramsey II remained in effect or a failure by Mr. Paniagua to question or correct the Ramseys after the family allowed the wrong policy to lapse, both actions can "create a special relationship with an insured." *Paper Savers, Inc. v. Nacsa*, 51 Cal. App. 4th 1090, 1099 (1996). This special relationship could create liability for Farmers, given its relationship to Mr. Paniagua. *See id.*

Mr. Paniagua has testified that he does not remember what the Ramseys told him or what he communicated to the Ramseys. (Docket Entry No. 42 at 9–11). Neither party has presented evidence that Mr. Paniagua did (or did not) receive notice from Farmers warning that Mr. Ramsey II's policy was about to lapse or had lapsed, did (or did not) receive notice that the policy for "Edward L. Ramsey" was about to lapse or had lapsed, or received no notice of any pending lapse from non-payment. The record is either unclear or disputed as to what Mr. Paniagua knew and what he and the family communicated about which policy was lapsing from non-payment of

premiums and which policy remained in effect.  This record presents factual disputes that preclude summary judgment.

Because of the factual disputes arising from Mr. Paniagua's actions and duties, summary judgment on the negligence claim is denied.

### D.  Punitive Damages

"Under California law, punitive damages 'may be available in actions not arising from contract, where fraud, oppression, or malice is proved.'" *Gaylord v. Nationwide Mut. Ins. Co.*, 776 F. Supp. 2d 1101, 1127 (E.D. Cal. 2011) (quoting *Moradi–Shalal v. Fireman's Fund Ins. Cos.,* 46 Cal.3d 287, 305 (1988)). The plaintiff must prove fraud, oppression, or malice by "clear and convincing evidence." Cal. Civ. Code § 3294(a). In the insurance context, "an insurance company's breach of the duty of good faith and fair dealing must be coupled with clear and convincing evidence of malice, fraud, or oppression in order to justify punitive damages." *Gaylord*, 776 F. Supp. 2d at 1127 (citing *PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 319 (1999)).

The court has granted summary judgment for Farmers on the claim of breach of the duty of good faith. Punitive damages are therefore not available.

## III.  Conclusion

The court denies Farmers' motion for summary judgment, (Docket Entry No. 37), as to the negligence claim, and grants the motion as to all other claims.

SIGNED on August 28, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge